

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| SCOTT CALDWELL, | ) | No. ED108409 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| vs. | ) | 17SL-CC02248 |
| | ) | |
| UNIFIRST CORPORATION and | ) | Honorable Joseph L. Walsh |
| MICHAEL DEAN SEEVER, II, | ) | |
| | ) | |
| Appellants. | ) | Filed:  October 27, 2020 |

James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

### OPINION

This well-travelled case has yo-yoed through our court system and now returns here for the third time.  This time, Appellants UniFirst and Seever appeal the trial court's judgment in favor of Respondent Caldwell, a judgment which confirmed an arbitrator's decision that this dispute was not arbitrable but belonged back in the circuit court since the arbitration clause in the parties' employment agreement lacked mutuality of consideration and was therefore not binding. We affirm because the arbitrator's decision was not in excess of his authority to decide threshold legal issues including whether the arbitration clause was valid and enforceable.

Background

Caldwell was hired in April 2012 as a district manager by UniFirst Corporation, a company engaged in commercial uniform rental. At the time Caldwell was hired, the parties signed an employment agreement and restrictive covenant which provided that Caldwell was initially hired for a two-week term that automatically renewed every two weeks and was terminable by either party for any reason upon two weeks' notice. The agreement included a non-compete clause, a number of restrictive covenants regarding the protection of UniFirst's trade secrets and confidential information, and an arbitration clause. The arbitration clause called for any dispute arising from the parties' employment relationship to be resolved through arbitration under the rules of the American Arbitration Association (AAA). The agreement included a delegation provision[1] which is a separate agreement that *delegates* to the arbitrator the authority to decide all threshold formation issues regarding the arbitration clause itself including whether the arbitration clause is enforceable.

1. *Caldwell I.*

UniFirst terminated Caldwell in July 2015. In June 2017, Caldwell filed this suit against Appellants for disability discrimination and retaliation in violation of the Missouri Human Rights Act, § 213.055[2]. Caldwell alleged that Appellants had discriminated and retaliated against him on the basis of an alleged disability involving his surgically-repaired back. Appellants moved to compel arbitration pursuant to the arbitration clause in Caldwell's employment contract. Appellants also asserted, pursuant to the delegation provision, that the parties had agreed that the

---

[1] According to *State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 48 (Mo. banc 2017), the arbitration clause's reference to the AAA's rules meant that the parties had thereby incorporated into their agreement the AAA's standard delegation clause.

[2] All state statutory references are to RSMo 2012 unless otherwise indicated.

arbitrator, not the trial court, would decide the threshold issues regarding the formation and enforceability of the arbitration clause itself.

The trial court denied Appellants' motion based on its finding that the arbitration clause was invalid and unenforceable because it was not supported by consideration in two respects. First, the court held that Caldwell's at-will employment was not sufficient consideration to support the agreement, and second, that the arbitration agreement lacked mutuality in that UniFirst unilaterally reserved for itself the ability to assert in court certain claims against Caldwell, while Caldwell was required to arbitrate any claims he might have.

Appellants appealed and this Court affirmed the trial court in *Caldwell v. UniFirst Corp.*, 570 S.W.3d 590 (Mo. App. E.D. 2018) (*Caldwell I*). The Missouri Supreme Court took transfer and then re-transferred the case back here with directions that we reconsider our decision in light of the Supreme Court's decision in *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018), in which it held that a delegation provision is severable and should be reviewed for its validity and enforceability separately from the underlying arbitration clause.

2. *Caldwell II.*

On reconsideration, we issued our opinion in *Caldwell v. UniFirst Corp.,* 583 S.W.3d 84 (Mo. App. E.D. 2019) (*Caldwell II)*. This time we reversed the trial court's denial of Appellants' motion to compel arbitration because the parties' valid and enforceable delegation provision meant that the arbitrator, not the trial court, was vested with the authority to decide the threshold issue of arbitrability. *Id.* at 90. So, we remanded with instructions to stay the civil case and send the parties back to the arbitrator for his determination of the threshold issue of arbitrability pursuant to the authority contractually granted to him under the delegation provision. *Id.* at 92.

3

On remand, Caldwell filed his demand for arbitration and his request pursuant to the delegation provision that the arbitrator determine as a threshold matter whether the arbitration clause was valid and enforceable. On August 20, 2019, the arbitrator heard the parties on that threshold matter and on October 11, 2019, issued his decision. The arbitrator determined Caldwell was an at-will employee and that while his at-will employment may have supplied sufficient consideration to support the *employment agreement*, it did not provide adequate consideration for the *arbitration clause* because under Missouri law, the arbitration clause needed to be supported by its own adequate consideration.

The arbitrator then looked to the parties' purported mutual promises to arbitrate and found that they lacked mutuality and therefore the arbitration clause failed for lack of consideration. He based this finding on the language of section 10 of the employment agreement that granted UniFirst broad powers to bring claims in court for injunctive relief against Caldwell for the "breach [of] any portion of this Agreement," thereby sidestepping the arbitration process, while Caldwell would remain bound to arbitrate any claims he was likely to have. Consequently, the arbitrator sent the case back to the circuit court for litigation and trial.

Appellants moved to vacate that order arguing that the arbitrator exceeded his power (1) by refusing to apply Massachusetts law as called for in the arbitration agreement and (2) by finding that Caldwell's at-will employment was insufficient consideration to support the arbitration clause. The trial court denied the motion and confirmed the arbitration order. This appeal follows.

<u>Applicable Law</u>

The parties concede that both the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., and the Missouri Uniform Arbitration Act ("MUAA"), § 435.350, et seq., apply to this case, and

4

thus "provide[] the governing standard[s] for this Court's review of the [arbitrator's award]." We note that the MUAA was fashioned after the FAA, and the FAA and MUAA are substantially similar." *Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015).[3]

Standard of Review

The Missouri Supreme Court has repeatedly held that our familiar *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), standards of review apply to the appellate review of judgments confirming or vacating arbitration awards. *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 735 (Mo. banc 2017) (citing *Eaton*, 461 S.W.3d at 431); *see also Lobel Fin. Inc. v. Bothel*, 570 S.W.3d 87, 91 (Mo. App. W.D. 2018). The application of *Murphy v. Carron* is supported by section 435.440 of the MUAA which provides that appeals of circuit court judgments in arbitration cases "shall be taken in the manner and to the same extent as from orders or judgments in a civil action."

Under *Murphy v. Carron*, we will affirm a trial court's judgment in a case decided without a jury unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* Under this standard, great deference is given to the trial court's evidentiary and factual determinations. *Corrington Park Associates, L.L.C. v. Barefoot, Inc.*, 983 S.W.2d 210, 212 (Mo. App. W.D. 1999). However, no such deference is given to a trial court's erroneous declaration or application of the law because we

---

[3] The FAA applies to all arbitration agreements which impact interstate commerce. *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015). This principal is an expansive one. *Id.*; (citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003)). Though our record is silent on the specific issue whether this arbitration agreement impacted interstate commerce, inasmuch as the parties have conceded that the FAA and the MUAA apply to this agreement and the record demonstrates that UniFirst is a national company, we will assume without deciding that this agreement affects interstate commerce. Nevertheless, our courts recognize that parties reserve the ability to designate which statute, the FAA or the MUAA, will govern their agreement. Since the parties failed to do that here and seem to have conceded that both statutes apply, we will apply both statutes.

review those questions de novo. *Id.*; *Zweig v. Metropolitan St. Louis Sewer Dist.*, 412 S.W.3d 223, 231 (Mo. banc 2013).

Moreover, appellate review of arbitration awards is fundamentally a creature of two statutes, namely the MUAA and the FAA, to which we, of course, are bound to adhere. *See Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 432 (Mo. banc 2003). The statutes set forth the specific grounds for review[4], one of which is applicable to this case – whether the arbitrator exceeded his authority. 9 U.S.C. § 10(a)(4); § 435.405.1(3).

Judicial review of arbitration decisions is a two-step process – first to the circuit court and then to this Court. § 435.400 – 410; § 435.440. Under § 435.400, upon application of a party, the arbitrator's award *shall* be confirmed unless it is vacated, modified, or corrected under § 435.405 or § 435.410. Under § 435.405, a party may file an application to vacate the award pursuant to one or more of the grounds set forth in § 435.405.1. The circuit court may also order a rehearing of the arbitration or may modify or correct the award. § 435.405.3-4. Section 435.440 then allows an appeal to this Court of the circuit court's disposition "in the manner and to the same extent as from orders or judgments in a civil action." § 435.440.2. The provision governing review under the FAA are substantially similar.

---

[4] Under Chapter 9 U.S.C. § 10(a) and § 435.405.1, an appellate court may review (1) whether an arbitration award was procured by corruption, fraud, or undue means, (2) whether there was evident partiality or corruption on the part of the arbitrator, (3) whether the arbitrator exceeded his or her power, and (4) whether the arbitrator wrongfully refused to postpone a hearing or refused to hear pertinent and material evidence. Section 435.405.1(5) provides an additional ground for review not relevant to this opinion.

## Discussion

*Point I:  The parties' Massachusetts choice of law provision.*

Generally, Missouri courts will honor a choice of law provision in actions between the parties to a contract.  *Baisch & Skinner, Inc. v. Bair*, 507 S.W.3d 627, 631 (Mo. App. E.D. 2016); *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012).  This contract, executed by the parties in Missouri, contained a choice-of-law provision that provides: "This Agreement shall be governed and construed under the laws of the Commonwealth of Massachusetts."  Appellants contend, therefore, that the arbitrator should have applied Massachusetts law—not Missouri law—to the question whether the arbitration clause was valid and enforceable.  And that under Massachusetts law, the parties' mutual promises constitute valid consideration in support of the arbitration agreement.  We disagree.

In Missouri, issues regarding contract formation must be resolved under the law of this state.  *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014) ("Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate.").  And, consideration is one of the basic elements of contract formation.  *Id.* at 779.  So, since the issue here—whether the arbitration agreement was supported by adequate consideration—is one of contract formation, the arbitrator's decision to apply Missouri law to the issue and not Massachusetts law is correct and is not in excess of his power.  § 435.405.1(3).

*Point II:  The arbitration agreement failed for lack of consideration.*

In their second point, Appellants claim the arbitrator exceeded his power in finding that the arbitration clause failed for lack of consideration because he generally misapplied the law and specifically failed to adhere to the Supreme Court's decision in *Soars*.  We disagree.

7

Missouri contract law principles govern the question whether an arbitration agreement is valid and enforceable. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 20-21 (Mo. App. W.D. 2008); *see also Eaton,* 461 S.W.3d at 431-32 ("Arbitration agreements are tested through a lens of ordinary state law principles that govern contracts."); *Greitens*, 509 S.W.3d at 741 ("Courts examine arbitration agreements as they would any other contractual agreement, and the customary rules of state contract law and contract interpretation apply.").

The contract principle of severability is critical in this context because there are actually three separate contracts here—the underlying employment agreement, the arbitration agreement, and the delegation clause—each of which must independently satisfy the basic contract formation principles of *offer*, *acceptance,* and *consideration.* *See, e.g.*, *Baker*, 450 S.W.3d at 774; *Ellis v. JF Enterprises, LLC*, 482 S.W.3d 417, 419 (Mo. banc 2016). Of course, only the arbitration agreement and whether it is supported by consideration is before us.

We now turn to Appellants' argument that the *Soars* decision mandates a finding that Caldwell's at-will employment supplied the consideration for the arbitration clause here. We disagree because we find Appellants misconstrue the breadth of the *Soars* decision as well as its applicability to the facts of this case, and therefore, we are not convinced that the arbitrator misapplied the law or exceeded his power under the contract.

*Soars* considered only whether there was a valid delegation provision not whether the arbitration agreement itself was valid, which is the issue before us:

> [T]he question of an arbitration agreement's validity as a whole is not for this Court to decide when the delegation provision is valid and enforceable. There would be no purpose behind a delegation provision if the opposite were true. This Court has held formation issues may be delegated to arbitration if a valid delegation provision exists. 563 S.W.3d at 115 n.3.

8

Thus, this case, from a procedural standpoint, has already moved past the scope of *Soars* because here the parties concede, and we already decided in *Caldwell II*, that the parties' delegation provision is valid and empowers the arbitrator in this case to determine threshold formation issues regarding the arbitration clause including whether it is supported by consideration.

Nevertheless, *Soars* is instructive. The Supreme Court emphasized that when there is a delegation provision, it is for the arbitrator to decide whether the arbitration agreement is valid. *Id.* The Court even addressed the specific issue before us here: "[w]hether the Agreement as a whole contains illusory provisions is for the arbitrator to determine so long as the delegation provision, standing alone, is valid." *Id.* at 117. And we echoed this in *Caldwell II:* "challenges to the validity and enforceability of the agreement as a whole, including his contention that the arbitration agreement itself lacked consideration, are for the arbitrator." 583 S.W.3d at 92.

So we now turn to the arbitrator's decision. The arbitrator found that mutuality of consideration was lacking because paragraph 10[5] of the agreement reserved for Appellants the right to seek injunctive relief in court against Caldwell on certain claims, thereby sidestepping the arbitration process, while Caldwell remained bound to arbitrate any claims he was likely to have. We agree.

Mutuality of obligation requires that "an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is

---

[5] The EMPLOYEE agrees that it would be difficult to measure any damages caused to the COMPANY which might result from any breach by the EMPLOYEE of the promises set forth in Sections 5, 6, and 7, and that in any event money damages would be an inadequate remedy for any such breach. Accordingly, subject to Section 9 of this Agreement, the EMPLOYEE agrees that if the EMPLOYEE breaches or proposes to breach any portion of this Agreement, the COMPANY shall be entitled, in addition to all other remedies that it may have, to an injunction or other appropriate equitable relief to restrain any such breach without showing or proving any actual damages to the COMPANY.

bound unless both are bound." *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 686 (Mo. App. E.D. 2015). Under this principle, a promise by one party to a contract is sufficient consideration for a promise by the other party, so long as the promises are not illusory in nature. *Id.* A promise is illusory when one party retains the unilateral right to sidestep its obligations. *Id.*; *see also Eaton,* 461 S.W.3d at 431-33. Where the practical effect of an arbitration agreement binds only one of the parties to arbitration, it lacks mutuality of promise, and is devoid of consideration. *Jimenez*, 475 S.W.3d at 688 (citing *Baker*, 450 S.W.3d at 776-77).

In *Jimenez,* the arbitration agreement exempted from arbitration "claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 and claims not lawfully subject to arbitration . . . ." *Id.* at 686. Upon examination of Section 4,[6] we concluded that Cintas unilaterally exempted itself from arbitrating violations of non-compete provisions, which were the claims that Cintas was most likely to bring against Jimenez, while Jimenez remained tethered to the agreement to arbitrate all legally arbitrable claims she might have against Cintas. *Id.* at 687. We found that this circumstance rendered Cintas' promise to arbitrate illusory and the arbitration agreement invalid for lack of mutuality of consideration. *Id.*

We cannot convict the arbitrator here of exceeding his power based on his conclusion, like the conclusion we reached in *Jimenez,* that the foregoing language from paragraph 10 of the parties' agreement rendered UniFirst's promise to arbitrate illusory, a fatal flaw to the validity and enforceability of the arbitration agreement under Missouri law. Appellants' second point is denied.

---

[6] "Employer[,] may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction or other injunctive relief to enforce Employee's compliance with the obligations, acknowledgments and covenants in this Section 4. Employer may also include as part of such injunction action any claims for injunctive relief under any applicable law arising from the same facts or circumstances as any threatened or actual violations of Employee's obligations, acknowledgements and covenants in this Section 4."

10

## Conclusion

Therefore, the Arbitrator's decision, as confirmed by the trial court's judgment, is affirmed.

_____

James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J. and
Robin Ransom, J. concur.